UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**PETER JAGER,**

                              Plaintiff,

                    - against -

**BOSTON ROAD AUTO MALL, INC.,**

                              Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/16/15

14 Civ. 614 (LLS)[1]

**OPINION & ORDER**

        Plaintiff Peter Jager sued defendant Boston Road Auto Mall, Inc. ("BRAM") for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., and the New York Lemon Law, NY. Gen. Bus. Law § 198-b; for deceptive business practices, NY. Gen. Bus. Law § 349; and for fraud.

        Jager moves for summary judgment in his favor on the TILA claim. BRAM moves for summary judgment dismissing the TILA and Magnuson-Moss claims and declining to exercise supplemental jurisdiction over the state law claims. For the reasons that follow, Jager's motion is granted, the Magnuson-Moss claims are dismissed for lack of subject-matter jurisdiction, and I decline to exercise supplemental jurisdiction over the state law claims.

---

[1] Plaintiff has by error filed most of his papers in this action citing the wrong year as docket number 13 Civ. 614.

**FACTS**

According to Jager's uncontradicted statement of facts, BRAM sells used cars and arranges financing for those sales. Pl.'s Local Rule 56.1 Statement of Facts ¶¶ 2-3, Dkt. No. 14. On November 21, 2013, Jager purchased a 2007 Chrysler Pacifica from BRAM. Id. ¶ 4. The purchase was financed by BRAM, and the only disclosure of the financing terms was a single-page summary ("pricing recap"). See id. ¶ 5.

The financial terms are listed in two columns on the bottom half of the pricing recap (spacing and underlining in original; the text in brackets is circled in original):

| | | | | |
|---|---|---|---|---|
| Sales Price: | $9,300.00 | | Down Payment: | $2,500.00 |
| 8.8750% Sales Tax: | 825.38 | | Pick-Up Note: | $350.00 |
| Government Fees: | 400.00 | | | ---------- |
| Tracking Device: | 495.00 | | Amount Financed: | $9,060.38 |
| Dealer Fee: | 395.00 | | Financing at 20.00% APR: | 3,530.36 |
| Service Charge: | 495.00 | | | ---------- |
| | ---------- | | Balance Due: | $12,590.74 |
| TOTAL: | $11,910.38 | | | ========== |
| | ========== | | | |

1 Pick-Up Note payment of          $350.00
Due on 12/21/13

[83] payments of   [$150.]00 each
Payable Semi-Monthly beginning 11/30/13
Plus one final payment of    $140.74
Final payment will be due on  5/15/17

The actual document is attached to this Opinion as Exhibit A.

**DISCUSSION**

Under Federal Rule of Civil Procedure 56(a), "the court shall grant summary judgment if the movant shows that there is

-2-

no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."

### Truth in Lending Act

Jager seeks summary judgment in his favor on the TILA claim

and an award of statutory damages. BRAM acknowledges that the

transaction is a closed end consumer credit transaction and that

it is a creditor subject to the TILA disclosure requirements of

15 U.S.C. § 1638(a). See Westphal Affirm. ¶ 12, Nov. 20, 2014,

Dkt. No. 23. Accordingly, Jager must show that BRAM violated one

of the TILA disclosure requirements that gives rise to statutory

damages.

"It is the purpose of [the Truth in Lending Act] to assure

a meaningful disclosure of credit terms so that the consumer

will be able to compare more readily the various credit terms

available to him and avoid the uninformed use of credit . . . ."

15 U.S.C. § 1601(a). "TILA endeavors to enable consumers to

evaluate credit offers separately from the purchase of

merchandise, and thereby to create an active market providing

more efficient credit prices." Poulin v. Balise Auto Sales,

Inc., 647 F.3d 36, 39 (2d Cir. 2011) (quoting Cornist v. B.J.T.

Auto Sales, Inc., 272 F.3d 322, 326 (6th Cir. 2001)). "The Act

is remedial in nature, designed to remedy what Congressional

hearings revealed to be unscrupulous and predatory creditor

-3-

practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated." N.C. Freed Co. v. Bd. of Governors of Fed. Reserve Sys., 473 F.2d 1210, 1214 (2d Cir. 1973) (footnote omitted); see also Grant v. Imperial Motors, 539 F.2d 506, 510 (5th Cir. 1976) ("[O]nce the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability.").

## TILA Liability

Jager argues that BRAM violated TILA by failing to comply with certain requirements of 15 U.S.C. § 1638(a):

> For each consumer credit transaction other than under an open end credit plan, the creditor shall disclose each of the following items, to the extent applicable:
> . . . .
> (3) The "finance charge," not itemized, using that term.
> . . . .
> (5) The sum of the amount financed and the finance charge, which shall be termed the "total of payments."
> . . . .
> (7) In a sale of property or services in which the seller is the creditor required to disclose pursuant to section 1631(b) of this title, the "total sale price," using that term, which shall be the total of the cash price of the property or services, additional charges, and the finance charge.
> (8) Descriptive explanations of the terms "amount financed," "finance charge," "annual percentage rate," "total of payments," and "total sale price" as

-4-

specified by the [Consumer Financial Protection]
Bureau.

Jager also contends that BRAM violated TILA by not
complying with the requirement that "[t]he terms 'annual
percentage rate' and 'finance charge' shall be disclosed more
conspicuously than other terms." 15 U.S.C. § 1632(a).

Here, the pricing recap, which is the only financing
disclosure, never uses the required terms "total of payments" or
"total sale price." Rather the pricing recap uses the term
"TOTAL" for the cash price of the car before the calculation of
an additional $3,530.36 finance charge. The sum of the amount
financed and the finance charge, which should be the "total of
payments," is termed the "Balance Due." That does not comply
with § 1638(a)(5). The "total of the cash price of the property
or services, additional charges, and the finance charge," which
is the the "total sale price" defined in the statute (and which
can be computed as $15,440.74), is not disclosed in the pricing
recap anywhere. That does not comply with § 1638(a)(7).

The pricing recap also does not comply with TILA because it
does not disclose the finance charge "using that term," as
required by § 1638(a)(3), and the annual percentage rate and
finance charge are not disclosed more conspicuously than other
terms, as required by § 1632(a). Instead, those terms are
combined on one line as "Financing at 20.00% APR: 3,530.36." By

-5-

combining those terms, the pricing recap discloses them less conspicuously than other terms, each of which appear on their own line.

Finally, § 1638(a)(8) requires that certain terms be accompanied by descriptive explanations specified by the Consumer Financial Protection Bureau. The terms and explanations are:

- amount financed: "the amount of credit provided to you or on your behalf" (12 C.F.R. § 1026.18(b))
- finance charge: "the dollar amount the credit will cost you" (id. subsec. (d))
- annual percentage rate: "the cost of your credit as a yearly rate" (id. subsec. (e))
- total of payments: "the amount you will have paid when you have made all scheduled payments" (id. subsec. (h))
- total sale price: "the total price of your purchase on credit, including your downpayment of $__" (id. subsec. (j)).

The pricing recap does not comply with those requirements: it includes no descriptive explanation for any of those terms.

## TILA Damages

Jager seeks only statutory damages.[2] TILA § 1640(a) provides that

---

[2] "The Court should award Jager his statutory damages . . . ." Pl.'s Memorandum of Law 12, Oct. 17, 2014, Dkt. No. 13.

-6-

any creditor who fails to comply with any requirement
imposed under this part . . . with respect to any
person is liable to such person in an amount equal to
the sum of--

. . .

     (2)(A)(i) in the case of an individual action
twice the amount of any finance charge in connection
with the transaction . . . .

However not all, but only certain, TILA violations give rise to
statutory damages. For those disclosures required by Section
1638(a) (as in this cases) statutory damages are only given for
violations of paragraphs (2) ("insofar as it requires a
disclosure of the 'amount financed'"), (3)-(6), and (9). 15
U.S.C. § 1640(a).

    Of BRAM's violations of § 1638(a),[3] the provisions
concerning the definition of the finance charge and the total of
payments, § 1638(a)(3), (5), give rise to statutory damages.
Those violations may be formal in nature, but they go to a core
purpose of TILA. By mandating the use of standard terms, TILA
enables the consumer "to compare more readily the various credit
terms available to him." 15 U.S.C. § 1601(a). When a creditor

_____

[3] Violations of § 1632(a) do not give rise to statutory damages unless they
also violate the "closed list" of § 1638(a) subsections that give rise to
statutory damages. In re Ferrell, 539 F.3d 1186, 1191-92 (9th Cir. 2008)
(alterations in original) (citations omitted); accord Kelen v. World Fin.
Network Nat. Bank, 763 F. Supp. 2d 391, 393 (S.D.N.Y. 2011).

uses non-standard terms, it frustrates the consumer's ability to compare different offers of credit.

On the basis of the undisputed facts, BRAM violated TILA by not correctly complying with the requirement of defining the finance charge and total of payments. Accordingly, Jager is granted summary judgment on the TILA claim, and because those violations give rise to statutory damages, he is awarded statutory damages.

The amount of statutory damages depends on the type of transaction. For an individual action concerning a closed end consumer credit transaction not secured by real property, statutory damages are "twice the amount of any finance charge in connection with the transaction." 15 U.S.C. § 1640(a)(2)(A)(i). However, statutory damages for such transactions are capped at $2,000. See Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 62-63, 125 S. Ct. 460, 468-69 (2004).

Here, the finance charge, as listed in the pricing recap, is $3,530.36. Twice that is $7,060.72, so Jager is awarded the maximum statutory damages of $2,000.

## Magnuson-Moss Warranty Act

BRAM moves for summary judgment on the Magnuson-Moss Warranty Act claims on the ground that Jager's claim does not

-8-

meet the $50,000 amount in controversy requirement for Magnuson-Moss claims brought in federal court.

Magnuson-Moss provides that:

> . . . a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief--
> (A) in any court of competent jurisdiction in any State or the District of Columbia; or
> (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection.

15 U.S.C. § 2310(d)(1). But it also limits the subject-matter jurisdiction of federal courts to hear Magnuson-Moss claims, directing that no such "claim shall be cognizable" in a federal court--

> (A) if the amount in controversy of any individual claim is less than the sum or value of $25;
> (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or
> (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

15 U.S.C. § 2310(d)(3).

"Jager does not dispute that his claim is for less than $50,000." Pl.'s Reply Memorandum 9, Dkt. No. 26. Accordingly, there is no independent subject-matter jurisdiction under

Magnuson-Moss. However, as there is independent subject-matter

jurisdiction over the TILA claim, Jager urges this Court to

exercise supplemental jurisdiction over the Magnuson-Moss

claims.

> 28 U.S.C. 1367(a) states that,

> [except] as expressly provided otherwise by Federal
> statute, in any civil action of which the district
> courts have original jurisdiction, the district courts
> shall have supplemental jurisdiction over all other
> claims that are so related to claims in the action
> within such original jurisdiction that they form part
> of the same case or controversy under Article III of
> the United States Constitution.

Despite some different views in other circuits, see, e.g.,

Voelker v. Porsche Cars N. Am., Inc., 353 F.3d 516, 522 (7th

Cir. 2003); Barnes v. West, Inc., 249 F. Supp. 2d 737, 739-40

(E.D. Va. 2003), the better reading of Congress's command in the

Magnuson-Moss Warranty Act that no claim "shall be cognizable in

a suit brought" in federal court "if the amount in controversy

is less than the sum or value of $50,000," 15 U.S.C.

§ 2310(d)(3), is that, by enacting the specific jurisdictional

limitations for Magnuson-Moss claims in federal court, Congress

foreclosed the exercise of supplemental jurisdiction over

Magnuson-Moss claims for less than $50,000. See Ebin v. Kangadis

Food Inc., No. 13 Civ. 2311 (JSR), 2013 WL 3936193, at *1

(S.D.N.Y. July 26, 2013) (The contention that the Class Action

-10-

Fairness Act creates an alternative basis for federal jurisdiction over Magnuson-Moss claims "is incorrect. Indeed, it is flatly contradicted by the plain text of the MMWA. As stated above, the MMWA provides that '[n]o claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection'--i.e., a suit brought under the MMWA in federal district court--unless the MMWA's independent jurisdictional requirements are met. Since plaintiffs concededly cannot meet the MMWA's jurisdictional prerequisites, their MMWA is dismissed."); Lieb v. Am. Motors Corp., 538 F. Supp. 127, 140 (S.D.N.Y. 1982) ("In enacting Magnuson-Moss, Congress implicitly negated pendent jurisdiction of claims made under the statute that amount to less than $50,000.").

Accordingly, the Magnuson-Moss claims are dismissed for lack of subject-matter jurisdiction.

### State Law Claims

Jager and BRAM are both citizens of New York. See Compl. ¶¶ 1-2. Accordingly, there is no diversity jurisdiction over the state law claims. See 28 U.S.C. § 1332(a). BRAM urges this Court to decline to exercise supplement jurisdiction over the state law claims.

"The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the claim substantially

-11-

predominates over the claim or claims over which the district

court has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(2).

> The "substantially predominates" standard of
> § 1367(c)(2) creates a "limited exception" to the
> exercise of supplemental jurisdiction that should be
> invoked only when "permitting litigation of all claims
> in the district court can accurately be described as
> allowing a federal tail to wag what is in substance a
> state dog."

Luongo v. Nationwide Mut. Ins. Co., No. 95 Civ. 3190 (MBM), 1996

WL 445365, at *5 (S.D.N.Y. Aug. 7, 1996) (quoting Borough of W.

Mifflin v. Lancaster, 45 F.3d 780, 789 (3d Cir. 1995)).

Here, Jager's claims for deceptive business practices,

fraud, and violation of the New York State Lemon Law involve

factual and legal issues wholly distinct from the TILA claim.

The TILA claim was determined, without factual dispute and

solely as a matter of law, with reference to the single page

pricing recap, and is limited to $2,000 in damages. Adjudication

of the state claims implies determining conflicting factual

accounts concerning representations made by BRAM to Jager and

the actions of the parties following the sale, which "are more

complex[,] require more judicial resources to adjudicate[, and]

are more salient in the case as a whole than the federal law

claims." Ibid (quoting Diven v. Amalgamated Transit Union Int'l

& Local 689, 38 F.3d 598, 601 (D.C. Cir. 1994)). Furthermore,

they involve no issue of federal interest; Congressional

-12-

policies exclude small Magnuson-Moss claims and diversity suits involving less than $75,000 from occupying federal courts and juries. Nor is there any need for federal resources and jury time to be expended on the (so far, unexamined) state law issues over the purchase of a used private automobile.

If the parties are unable to settle the amount of attorneys' fees to which Jager is entitled under TILA, I will determine it. As to the state law claims, I decline to exercise supplemental jurisdiction.

### CONCLUSION

Plaintiff Peter Jager's motion for partial summary judgment on the TILA claim (count I of the complaint) (Dkt. No. 12) is granted to the extent of $2,000 and attorneys' fees.

Defendant Boston Road Auto Mall, Inc.'s cross-motion for partial summary judgment (Dkt. No. 22) is granted to the extent that the Magnuson-Moss claims (counts II, III, and IV of the complaint) and the remaining state Lemon Law and common law claims (counts V, VI, and VII of the complaint) are dismissed without prejudice for lack of subject-matter jurisdiction.

The clerk is requested to enter judgment accordingly with costs and disbursements according to law.

Jager may move separately for attorneys' fees under Federal Rule of Civil Procedure 54(d)(2).

So ordered.

Dated:     New York, New York
           January 15, 2015

                                    _Louis L. Stanton_
                                    LOUIS L. STANTON
                                       U.S.D.J.

-14-

# EXHIBIT A

Report: C-1-L-P-2

~~PRICING TOOM~~
-------------
Sale Date: 11/21/13

**BUYER**
-------------------------------------

Stock #: 263
Name and address: PETER P JAGER
754 MACE AVE
BRONX, NY 10467

County: BRONX
Co-Buyer: None

Home Phone:
Work Phone:
Cell Phone: 347-504-2717


Drivers License: 406521454 NY

**SELLER**
-------------------------------

BOSTON ROAD AUTO MALL
3040 LURTING AVE
BRONX, NY 10469
718-708-5868

**VEHICLE**
-----------------------------

07 CHRYSLER PACIFICA; 4DR
VIN: 2A8GF48X17R213909
Color(s): BLUE
Mileage:  95,671


Vehicle Features:
Driver Air Bag; Passenger Air Bag; Front Head Air Bag; Rear Head Air Bag; Multi-Zone A/C; A/C;
Security System; AM/FM Stereo; CD Player; ABS; Cruise Control; All Wheel Drive; Power Door
Locks; Power Driver Seat; Power Passenger Seat; Cloth Seats; Bucket Seats; Power Steering;
Adjustable Steering Wheel; Traction Control; Aluminum Wheels; Power Windows; A/T; Premium
Sound System; Air Suspension; Engine Immobilizer; CD Changer; Leather Seats

| | | | |
|---|---|---|---|
| Sales Price: | $9,300.00 | Down Payment: | $2,500.00 |
| 8.8750% Sales Tax: | 825.38 | Pick-Up Note: | $350.00 |
| Government Fees: | .400.00 | | |
| Tracking Device: | 495.00 | Amount Financed: | $9,060.38 |
| Dealer Fee: | 395.00 | Financing at 20.00% APR: | 3,530.36 |
| Service Charge: | 495.00 | | |
| | | Balance Due: | $12,590.74 |
| TOTAL: | $11,910.38 | | |

1 Pick-Up Note payment of          $350.00
Due on 12/21/13

83 payments of   $150.00 each
Payable Semi-Monthly beginning 11/30/13
Plus one final payment of   $140.74
Final payment will be due on   5/15/17


X _Peter Joger_
   PETER P. JAGER

X _(signature)_
   BOSTON ROAD AUTO MALL